The PEOPLE of the State of
Colorado, Petitioner,

v.

John Leago THOMAS, Jr., Respondent.

No. 84SC487.

Supreme Court of Colorado,
En Banc.

Dec. 15, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner.

Sawaya, Rose & Roads, P.C., Richard B. Rose, Robert Ward, Denver, for respondent.

LOHR, Justice.

The defendant, John Leago Thomas, Jr., was convicted of attempted reckless manslaughter and first degree assault as the result of a jury trial in Adams County District Court. On appeal, the defendant argued, among other things, that attempted reckless manslaughter is not a cognizable crime in Colorado. The court of appeals agreed with the defendant's argument and reversed the conviction for attempted reckless manslaughter, but affirmed the conviction for first degree assault. *People v. Thomas*, 694 P.2d 1280 (Colo.App.1984). We granted certiorari to determine whether attempted reckless manslaughter is a cognizable crime in the state of Colorado. We conclude that it is, and hold that the court of appeals erred in reversing the defendant's conviction for that crime.

### I.

On the evening of February 4, 1981, the defendant received a telephone call from a former girlfriend informing him that she had been raped in her apartment by a man who lived in an apartment upstairs. The defendant arrived at the woman's apartment shortly thereafter, armed with a pistol. He went upstairs and gained entrance into the apartment occupied by the alleged assailant by identifying himself as a policeman. The defendant pointed his gun at the man who, believing the defendant was a police officer, accompanied him back down to the woman's apartment. The woman identified the man as the rapist, and the defendant instructed her to call the police. At that time, the man started to flee to his own apartment, and the defendant gave chase. The defendant fired three shots, two of which struck the fleeing man. The defendant testified that he fired the first shot as a warning when the man was going up the stairs, that he fired a second shot accidentally when the man kicked him while on the stairs, and that the third shot was also a warning shot, fired from the outside of the building near the window of the apartment occupied by the alleged rapist. When the police arrived, they found the defendant still waiting outside, holding the gun.

The jury was instructed on the crimes of attempted first degree murder, first degree assault, and the lesser included offenses of attempted second degree murder, attempted reckless manslaughter, attempted heat of passion manslaughter, and second degree assault. The jury returned verdicts of guilty to the charges of first degree assault and attempted reckless manslaughter, and the trial court entered judgment accordingly.

Upon appeal, the court of appeals sustained the conviction for first degree assault, but reversed the attempted reckless manslaughter conviction on the basis that attempted reckless manslaughter is not a legally cognizable offense in Colorado. *People v. Thomas*, 694 P.2d 1280 (Colo. App.1984). We granted certiorari to review that latter conclusion and the resulting reversal of the defendant's conviction for attempted reckless manslaughter.

### II.

#### A.

The language of the relevant statutes provides the framework for our analysis. The crime of reckless manslaughter is defined in section 18–3–104(1)(a), 8B C.R.S. (1986), as follows:

> (1) A person commits the crime of manslaughter if:
>
> (a) He recklessly causes the death of another person; ....

"Recklessly," the relevant culpable mental state for this crime, is defined in section 18–1–501(8), 8B C.R.S. (1986):

(8) A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.

As applied to the offense of reckless manslaughter, the requisite conscious disregard of a substantial and unjustifiable risk relates to a result, the death of another person.

The inchoate offense of criminal attempt is defined as follows in section 18–2–101(1), 8B C.R.S. (1986):

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense....

The court of appeals held that "[r]ecklessness is ... a mental culpability which is incompatible with the concept of an intentional act." *People v. Thomas*, 694 P.2d at 1281. This is so, the court held, because the "conscious disregard" with respect to risk of death that is essential to reckless manslaughter cannot be equated with the conscious intent to cause death which the court of appeals implicitly determined to be a necessary element of the offense of criminal attempt in this context. *Id.* On certiorari review, the defendant supports this analysis, contending that "[o]ne cannot intend to cause a specific result ... by consciously disregarding the risk that the result will occur." A careful analysis of the elements of criminal attempt and of reckless manslaughter demonstrates, however, that the court of appeals' analysis and the defendant's supporting arguments are misconceived.

In *People v. Frysig*, 628 P.2d 1004 (Colo.1981), we construed the criminal attempt statute in the context of a charge of attempted first degree sexual assault. We held that the intent to commit the underlying offense is an essential element of the crime. *Frysig*, 628 P.2d at 1010.

More precisely, in order to be guilty of criminal attempt, the actor must act with the kind of culpability otherwise required for commission of the underlying offense and must engage in the conduct which constitutes the substantial step with the further intent to perform acts which, if completed, would constitute the underlying offense.

*Id.* In order to complete the offense of reckless manslaughter, it is necessary that the actor cause the death of another person by acting in a manner that involves a substantial and unjustifiable risk of death of that other person and that the actor be conscious of that risk and of its nature when electing to act. *See People v. Shaw*, 646 P.2d 375, 380 (Colo.1982); *People v. Bettis*, 43 Colo.App. 104, 106, 602 P.2d 877, 878 (1979). Attempted reckless manslaughter requires that the accused have the intent to commit the underlying offense of reckless manslaughter. The "intent to commit the underlying offense" of which *People v. Frysig* speaks is the intent to engage in and complete the risk-producing act or conduct. It does not include an intent that death occur even though the underlying crime, reckless manslaughter, has death as an essential element.[1]

---

1. For some crimes it may be that the intent to perform acts which, if completed, would constitute the underlying offense is the substantial equivalent of a specific intent to commit the underlying offense. *See People v. Frysig*, 628 P.2d 1004 (Colo.1981) (attempted first-degree sexual assault); *cf. People v. Derrera*, 667 P.2d 1363, 1367–69 (Colo.1983) ("knowingly" with respect to result necessarily includes the same culpable mental state with respect to conduct and circumstances, as applied to the crimes of attempted robbery and attempted second-degree sexual assault). For other crimes, however, the purposeful completion of the actor's conduct does not necessarily satisfy all the essential elements of the crime. For instance, in the case of extreme indifference murder, death is an essential element that will not necessarily be satisfied even if all the elements relating to conduct and culpable mental state exist. *See People v. Castro*, 657 P.2d 932 (Colo.1983). Reckless manslaughter is analogous to extreme indifference murder in that respect.

■ The crime of attempted reckless manslaughter also requires that the risk-producing act or conduct be commenced and sufficiently pursued to constitute a "substantial step toward the commission of the offense." § 18–2–101(1), 8B C.R.S. (1986). That is, the act or conduct must proceed far enough to be "strongly corroborative of the firmness of the actor's purpose," *id.*, to complete those acts that will produce a substantial and unjustifiable risk of death of another.

■ Finally, in order to be guilty of attempted reckless manslaughter the actor must engage in the requisite acts or conduct "with the kind of culpability otherwise required for the commission of the underlying offense," *People v. Frysig*, 628 P.2d at 1010, that is, with a conscious disregard of a substantial and unjustifiable risk that the acts or conduct will cause the death of another person. *See* §§ 18–3–104(1)(a) and 18–1–501(8), 8B C.R.S. (1986). Based upon this analysis, and contrary to the defendant's argument, there is no logical or legal inconsistency involved in the recognition of attempted reckless manslaughter as a crime under the Colorado Criminal Code.

Our analysis of the crime of attempted reckless manslaughter is buttressed by the case of *People v. Castro*, 657 P.2d 932 (Colo.1983), in which we held that attempted extreme indifference murder is a cognizable crime under the Colorado Criminal Code. In that case, the defendant urged that extreme indifference murder involves an unintentional and inchoate act—apparently referring to the required element of the death of another, which can more accurately be characterized as a result than as an act—and that criminal attempt requires an intent to complete the underlying offense. *Id.* at 937. The latter intent, the argument proceeded, necessarily involves an intent that the death of another result from the actor's conduct. *Id.* The defendant argued that to intend an unintentional and inchoate act defies logic, so there can be no such crime as attempted extreme indifference murder. *Id.* We concluded that an essential premise of this argument

was fatally flawed. Citing *People v. Marcy*, 628 P.2d 69 (Colo.1981), and *People ex rel. Russel v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974), we noted that "[t]he crime of extreme indifference murder, ... while not requiring a conscious object to kill, necessitates a conscious object to engage in conduct that creates a grave risk of death to another.... In this sense the culpability element of extreme indifference murder is akin to what traditionally has been known as 'general intent.'" *People v. Castro*, 657 P.2d at 938. *See* § 18–1–501(6), 8B C.R.S. (1986). Therefore, since the intentional state of mind required by the crime of attempted extreme indifference murder relates to the proscribed conduct and not the proscribed result, death of another person, we concluded that there is no logical inconsistency inherent in charging an attempt to commit extreme indifference murder. This parallels the foregoing analysis and conclusion with respect to the crime of attempted reckless manslaughter to which the present case relates.

Stated somewhat differently, *People v. Castro* makes clear that the intent requirement for extreme indifference murder does not involve a conscious object to kill, but instead necessitates a conscious object to engage in conduct that in fact creates a grave risk of death to another. This is not the specific intent encompassed within the Colorado Criminal Code's definition of the terms "intentionally" or "with intent" which requires a conscious object to cause a proscribed *result*. *See* § 18–1–501(5), 8B C.R.S. (1986). Rather, it is "akin to what traditionally has been known 'as 'general intent,'" *People v. Castro*, 657 P.2d at 938, which is described by the terms "knowingly" or "willfully," defined in section 18–1–501(6), 8B C.R.S. (1986), as those terms relate to *conduct*. Therefore, since the underlying crime of extreme indifference murder does not involve unintentional conduct, the attempt to commit that crime does not involve an attempt to commit an unintentional act. So it is as well with the crime of reckless manslaughter.

## B.

In *People v. Krovarz*, 697 P.2d 378 (Colo. 1985), we employed a new mode of analysis to determine whether a particular substantive crime can provide a foundation for criminal attempt liability. There, we examined the rationale for imposition of criminal penalties for attempts falling short of accomplishment of a completed substantive crime. We concluded that "culpability for criminal attempt rests primarily upon the actor's purpose to cause harmful consequences," and that "[p]unishment is justified where the actor intends harm because there exists a high likelihood that his 'unspent' intent will flower into harmful conduct at any moment." *People v. Krovarz*, 697 P.2d at 381 (citing Enker, *Mens Rea and Criminal Attempt*, 1977 Am.Bar. Found.Res.J. 845, 855–56). We held, however, that our criminal attempt statute does not require a conscious purpose to achieve proscribed results as a condition to criminal liability. *Id.* at 383. That is, criminal attempt is not a specific intent offense as such offenses are described in section 18–1–501(5), 8B C.R.S. (1986). Rather, the probability of future dangerousness that has given rise to the justified legislative judgment that criminal attempt liability should be imposed "is equally present when one acts knowingly." *Id.* at 381. "Knowingly" is defined in section 18–1–501(6), 8B C.R.S. (1986), and describes what is commonly referred to as general intent.

■ In *Krovarz*, we recognized that the underlying offense may consist of elements of conduct, result and circumstance and that where "knowingly" is the culpable mental state attached to each, as it is in the case of the crime of aggravated robbery involved in *Krovarz*, it is necessary to examine that mental state in relation to each type of element to see whether there inheres in each the potential danger that signals the legislative intent to impose criminal attempt liability. 697 P.2d at 381.

The culpable mental state for reckless manslaughter, in contrast, is "recklessly," which is directed only toward result, the death of another person. Under *Krovarz*, therefore, it is necessary to examine the mental state of "recklessly" in relation to the result of death of another in order to see whether it involves the potential danger that justifies the conclusion that attempt liability may be founded on the substantive offense of reckless manslaughter.

One acts recklessly with respect to result when he consciously disregards a substantial and unjustified risk that a result will occur. § 18–1–501(8), 8B C.R.S. (1986). When one engages in conduct that involves a risk of death that is both substantial and unjustified, and is conscious of the nature and extent of the risk, the actor demonstrates such a disregard for the likelihood that another will die as to evince a degree of dangerousness hardly less threatening to society than if the actor had chosen to cause death. *Cf. People v. Castro*, 657 P.2d at 938 (attempted extreme indifference murder is a cognizable offense; *Krovarz's* probability of future dangerousness analysis not employed). In *Krovarz*, we expressly reserved the issue of whether a substantive crime having recklessness with respect to result as an element could provide the basis for criminal attempt liability. *People v. Krovarz*, 697 P.2d at 381–82, n. 9.[2]

■ We suggested in *Krovarz* that recklessness might not suffice. We now conclude, however, that it does. The critical inquiry under *Krovarz* is potential for future danger. For this purpose, the awareness of a practical certainty of the prohibited result that is required for knowing conduct cannot be viewed as more dangerous, in any important degree, than the conscious disregard of a substantial and unjustifiable risk that the proscribed result will occur— the hallmark of reckless action. Although

---

**2.** In *People v. Hernandez*, 44 Colo.App. 161, 614 P.2d 900 (1980), the court of appeals held that attempted criminally negligent homicide is not a cognizable crime. The analysis in that case parallels that of the court of appeals in the present case. Although we have rejected this analysis, we express no opinion concerning the correctness of the result reached by the court of appeals in *People v. Hernandez*.

a difference in the degree of moral culpability of the actor might be perceived between knowingly achieving a proscribed result and recklessly accomplishing it, we now conclude that the difference in potential for future danger inherent in those two culpable mental states is not significant enough to justify a different result under the *Krovarz* test.[3]

We conclude that the index of dangerousness analysis utilized in *People v. Krovarz* leads to the same result achieved by examining and construing the statutory language under the standards of *People v. Castro*, 657 P.2d 932, and *People v. Frysig*, 628 P.2d 1004. Accordingly, we hold that attempted reckless manslaughter is a crime proscribed by the Colorado Criminal Code.

We reverse that part of the court of appeals' judgment overturning the defendant's conviction for attempted reckless manslaughter.

DUBOFSKY, J., specially concurs.

DUBOFSKY, Justice, specially concurring:

I join the majority opinion under the facts of this case. *People v. Krovarz*, 697 P.2d 378, 381 .n. 9 (Colo.1985), suggests that the analysis employed in that case should not be extended to attempted reckless conduct. The footnote in *Krovarz* reflected the concern of a commentator who observed that allowing one to be charged with attempted murder under the wide range of conduct encompassed within "reckless," without a resulting death, may extend criminal liability for harmful conduct to situations such as driving very fast on the wrong side of the road while going around a curve. Enker, *Mens Rea and*

*Criminal Attempt*, 1977 Am.Bar Found. Res.J. 845, 854. The conduct is not in fact harmful if there is no traffic coming in the opposite direction. *Id.* The commentator suggested that where the actor risks harm, rather than intending harm, the conduct should be penalized under a legislative definition of a substantive crime instead of the common law definition of attempt. *Id.* at 859. Given the facts in this case, however, I am convinced that the defendant came close enough to intending harm that he can be convicted of attempted reckless manslaughter.

---

**3.** When causing a particular result is an element of the substantive crime, the Model Penal Code requires as an element of criminal attempt that the actor "[do] or [omit] to do anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part." *Model Penal Code* § 5.01(1)(b) (Tent. Draft No. 10 1960). We have held, however, that under the different definition of criminal attempt in section 18-2-101(1), 8B C.R.S. (1986), purpose or belief that conduct will cause a proscribed result is not essential to liability. *People*

*v. Castro*, 657 P.2d at 937–38; *People v. Frysig*, 628 P.2d at 1010. Rather, intentional conduct alone will suffice. *People v. Castro*, 657 P.2d at. 937–38. Therefore, we conclude that under the Colorado Criminal Code, criminal attempt liability can be predicated on recklessness with respect to result even though it cannot be said, as we did in *People v. Krovarz* with respect to "knowingly," that "recklessly" in effect connotes a choice to create the proscribed result. *See People v. Krovarz*, 697 P.2d at 381–82 and n. 9.